Curia, per

Gantt, J.
Two principal questions arise in this~case. The first is, whether, by the general law, the garnishee, as a creditor in possession, has a right to retain the securities in his hands for the general balance of his account against the Josephs & Co. ? And if so,
2. Has the attachment Act deprived him of that right ?
The garnishee, in the argument in these cases, has been designated by various appellations, such as banker, bill broker, factor and agent. Judging, however from the nature of the transactions which he carried on for the Josephs & Co., the most appropriate designation of the character in which he acted, would be that of bill broker. Whatever the name may be, by which he ought to be distinguished, I feel very confident *287 that he was of that class of persons privileged by the common law and the usages of trade, to retain the securities in his hands as creditor in possession, on account of the responsibilities which he had brought upon himself in the direct line of his agency for the Josephs & Co., for whom he acted.
Whitaker in his treatise on Liens, p. 35, says, that bankers have a lien on all paper securities in their possession, for the general balance of their accounts. And at page 89, he reiterates the same position, with this addition, “ not only for debts accruing on the particular account for which the securities were deposited, but also, for a general balance due to them on other accounts from the same employer. ”
Selwyn, whom I esteem as amongst the most accurate of authors, in treating of the defence to the action of trover, says, “ The most usual defence to this action is, that the defendant has a lien on the goods, or a right to detain them.” And then proceeds to inquire under what circumstances a party may insist on this defence. Among a great variety of persons who are entitled to a general lien, in respect of a general balance of account, in speaking of bankers, he says, “ So where a banker has advanced money to a customer, he has a lien upon all the securities which come into his hands, belonging to that person, for the amount of his general balance; unless there be evidence to show that he received any particular security under special circumstances, which would take it out of the general rule.” And he refers to the case of Davis vs. Bowsher, 5 Term Rep. 488, sec. 2; Selwyn, p. 1287, 1288.
In 2 Livermore, p. 34, it is said, “ The law.' gives to the agent a qualified right over the property of his principal, in his possession, to hold it until* payment is made of what he is entitled to receive.” This right is denominated a lien, and is defined to be “ a right in one man, to retain that which is his possession belonging to another, until certain demands of him, the person in possession, are satisfied. ”
In the case of Kruger vs. Wilcox, reported in Ambler, p. 252, the following is the marginal note of the case. “A factor gains alien on goods consigned to him from his correspondent, for the balance of his account, as well as for the duties, &c., and may retain for such balance; but if he parts with the possession of the goods to the owner, ho loses the lien for the balance of accounts.” Lord Hardwickc says, in giving the judgment of the Court, “This is a case of bankruptcy, in which this Court always inclines to equality; yet, if any person has a specific lien, or a special property in goods, which is clear and plain, it shall be reserved to him, notwithstanding the bankruptcy.” And Livermore, p. 38, that “Since this case, which was in 1755, it is settled that a factor has a lien upon goods consigned to him, as well for his general balance, as for the incidental charges attending the particular goods in his hands; and that it is in favor of commerce, for the convenience of trade, and with a view to encourage them to advance money upon goods in their possession, of which must come to their hands as factors, that their right of lien has been allowed and so much favored; and that this lien upon the goods of his principal, is not only for the general balance of his account and for his advances, but also, for the amount of any sum for which he may have become security for his principal.” To show that the lien extends to a case of suretyship, by the factor or agent for his *288 principal, the case of Drinkwater and another, assignees of Dowding, (a bankrupt,) against Goodwin, reported in Cowper, 250, is referred to. I have examined the case, and the opinion of the Court, as delivered by-Lord Mansfield. To avoid prolixity, I insert only the principle decided, which is, “that a factor who becomes surety for his principal, has a lien on the goods sold by him, for his principal, to the amount of the sum for which he has so become surety.”
Paley on Agency, (at p. 109,) says, “It is now fully settled, that a factor has a lien upon each portion of goods in his possession, for his general balance, as well as for charges arising upon these particular goods ;” and adds, that since the case of Kruger vs. Wilcox, (which I have before referred to,) it has never been controverted, but is now received as a known principle of law, too clear to be disputed; and that this lien attaches, not only upon the goods in specie, but upon the proceeds and securities received in the course of his business; and he refers to a variety of authors in support of these positions. Cowper, 251 and 225; 2d East, 227; 3d B. & P. 489; and Willes, 400. If, then, the positions adverted to be correct, no doubt it follows, undeniably, that the garnishee in the cases before us, as the agent of the Josephs & Co., had a qualified right of *property in the securities of the Josephs & Co. in his possession; and there is nothing in the circumstances of these eases to deprive him of the benefit of that lien which the law invests him with. The right is derived to the garnishee from the liabilities incurred, in virtue of his agency and transaction of business for the Josephs & Co., and which, from the return made by him as garnishee, exceeds, very far exceeds, the amount of the funds of which he had possession, and which constitute the subject matter of these issues. The garnishee had a right, as creditor in possession, to retain these securities, until the liabilities which he had brought upon himself by his agency for the Josephs & Co. were removed.
To the credit of the garnishee, nothing of unfairness in the various transactions in which ho has been engaged for the Josephs & Co., as their agent, is either imputable or imputed to him. He has, indeed, been charged with a want of caution, in making himself responsible for the Josephs & Co., when he might have avoided such responsibilities by affixing his name in these transactions as agent merely. On this head, there are no specific proofs adduced; the presumption is, that it was required of him to act in the premises as he has done. And the general disappointment produced by the failure of the Josephs & Co., may, it is to be hoped, lead to more caution with all parties in future. The right of the garnishee, as creditor in possession, being thus fully recognized, we are to enquire,
Secondly, whether, by the terms of the Attachment Act, the right has been taken away from him. This will depend, exclusively, upon the construction to be given to the seventh clause of the Act, in the following words. “But if the person or persons so summoned, shall appear at the return of the writ, and lay claim to the said moneys, goods, chattels, or other things, and, upon oath, deny the same to belong to the absent debtor, or that he hath any moneys, goods, chattels, debts or books of account belonging to the absent debtor, if the plaintiff shall rest satisfied therewith, then the said attachment shall be discharged ; but if not, then *289 the claimant or claimants, or person or persons, so summoned as aforesaid, shall be put to plead the same, and the matter shall be tried by a jury forthwith, &c. And the party that shall be cast in the same, shall pay to the prevailing party such reasonable costs and charges as shall be allowed and taxed,” &c.
This clause of the attachment Act, was intended to advance, not abridge the rights of the garnishee. His claim to the funds in his hands, made by his return, is conclusive, unless the plaintiffs can show that there is no foundation, in fact or in law, for the claim. This cannot be done, for the lien is undeniable. The creditors can be in no better situation than the Josephs & Co. Would they be permitted to recover in trover, without paying the liabilities of the garnishee? Unquestionably not. The clause in the attachment Act, giving to a creditor in possession the right to *declare for his debt, was not intended to abridge any common law right which existed. It may furnish, in many instances, a cumulative remedy. It has no reference to the garnishee’s lien. This is secured to him, although there be not any present indebtedness for which he could maintain an action. It stands in the place of a remedy by action, and it is only necessary to show, by the relation of confidence between the parties, the garnishee has made advances or incurred liabilities, for which the funds in his hands may be necessary as an indemnity, and then the lien attaches. It is not necessary that the insolvency of the Josephs should be shown; the creditors are in their place; and if the Josephs could not recover the funds without paying the liabilities incurred by the garnishee, it follows, that the plaintiffs cannot defeat his lien, or put him to the proof of an actual present indebtedness.
I see nothing in the act to deprive the garnishee of his lien on the securities in his hands, for the liabilities incurred as the agent of the Josephs & Co., and the jury, under the charge of the presiding judge, having by their verdict, infringed upon the garnishee’s rights, a new trial should be granted.
RjciiaRdson, O’Neall, and ButeeR, JJ., concurred.
Earle, J.
I am satisfied that I took an erroneous view of the attachment Act, when I held, below, that the garnishee could not retain the property, unless he was a creditor entitled to bring an action. I have no doubt that there may exist a lien where there is no legal debt; and such a lien under the first section of the Act, would give a special property, which would enable the garnishee to hold.
I think too, that I was mistaken in supposing that the garnishee, here, puts his right to retain, altogether on the ground of being a creditor in possession. His return is susceptible of a different construction, and may well sustain his claim, if that be founded in law.
That is the important question; and although I agree that the case ought to go back for a new trial, I am not satisfied to lay down the law as broadly as the court has resolved to do.
Since the case of Kruger vs. Wilcox, it has not been questioned that a factor has a lien for a general balance; and later cases have allowed such lien for outstanding liabilities. This general proposition, although broadly laid down by Paley, Livermore, and Story, in their several *290 treatises, is derived from the cases of Drinkwater vs. Goodwin, (Cowper, 251,) and Hammond vs. Barclay, (2 East. 251.) They are the cases cited in all the compilations where that rule is laid down. And I think that they do not sustain the lien of the garnishee here. Other cases have likewise been relied on, Pulteney vs. Keymour, (3 Esp. N. P. Ca. 182;) King vs. Lee et al., (6 Pr. E. R. 269.) Meeker vs Wilson, (Mass. Rep.) Ingersall vs. *Vanbokkerlin, (7 Cowen R. 210.) some English and some American, to establish the same proposition. But when examined, they will not be found to touch the point made in this case. They arc all cases where the responsibility has been incurred on the credit of the particular goods on which the lien was claimed. They are cases of acceptances given upon consignments made or promised ; and the leading case, that of Drinkwater vs. Goodwin, was decided by Lord Mansfield, on the ground of express contract. Hammond vs. Barclay, was a case of acceptance given upon the consignment of a ship and cargo ; so was Pulteney vs. Keymour. And the obvious distinction between all that class of cases, and this, will be made manifest by the marginal note. “If a broker advances money, and gives his acceptances, on the credit of goods lodged in his hands, the owner cannot demand them without full indemnity ” So in The King vs. Lee, the point decided is, that a factor to whom goods have been sent for sale, and who has accepted bills of exchangs, drawn on him by his principal, to the amount of their value, has a lien upon them. An accumulation of authorities to establish so plain a proposition, as that a factor has a lien for a general balance, and that an attachment will not overreach an actual lien when it exists, was hardly necessary. Levy, the garnishee, does not stand upon that footing at all. And the question, whether ho is entitled to a lien, may depend on facts yet to be ascertained. Lien or not, it is true is a question of law ; but the facts out of which it may be claimed, are for the jury. Lord Mansfield said, in Green et al. vs. Farmer et al., (4 Burr. 2221,) that the convenience of commerce and natural justice, are on the side of liens ; and that courts lean that way, 1. Where there is an express contract; 2. Where it is implied from the usage of trade ; or 3. From the manner of dealing between the parties ; and 4. Where the defendant has acted as factor. There is nothing in this case to show that a lien arises on either of the grounds stated by Lord Mansfield. There was no contract, and no usage of the particular trade. The manner of dealing between the parties, leads to the opposite conclusion ; and whether he be called factor, banker, or bill-broker, he has no lien, if it be manifest from the manner of dealing, that he never looked to an indemnity, and that he relied on the personal credit of his customers. Mr. Story, in his well digested treatise on the law of Agency, says, that “ no lien will arise where there is an express agreement between the parties not to insist upon it; or where it is clear, from the whole transaction, that the party trusted to the personal credit of his debtor.” Such is the language of Livermore, and Chancellor Kent; and such, also, is the positive language of Lord Mansfield, in Green vs. Farmer.
The whole correspondence between the Josephs and Levy, and the letters from Levy to the Bank, tend very strongly to show that he never *291 looked to an indemnity; that he relied solely on the wealth and personal credit of *the Josephs. Take his letter to the Bank, of the 7th April, and can anything be more explicit. “ I yet hope, having acted virtually as their agent, always depending on the wealth of that house, that in good faith, some discrimination may eventually be made.” “ All of which was done for a commission, that looked to the labor only, without reference to the risk.” And indeed their letter, of the 20th April, in which they say, “You have the means to protect yourself, so far as the paper goes which is in your hands for collection,” seems to exclude the notion, that either they or he, up to that time, had any view to a lien, which would not have needed their authority to enforce.
See Martin vs. Solomon, 10 Rich. 539; 6 Rich. 178. An.
The whole of his liabilities were incurred before the securities came into his hands. ITe, therefore, could not have looked to them for indemnity, because he could not anticipate that he would receive them. It would be just as reasonable to allow a lien to every endorser or security, who obtains accidental possession of the goods of his principal. How can it be supposed that he could have looked to a lien on securities for 40 or $50,000 yet to be received, when incurring liabilities to the amount of $400,000.
I cannot, therefore, unite with my brethren in saying, as matter of law, that Mr. Levy had a lien. Whether he was banker or bill-broker, it seems to me very obvious that he was dealing on their credit, or his own. If he looked to theirs, it is clear, on authority, that he has no lien ; a fortiori, if he dealt upon his own, he can claim none.
This, however, is a question of fact which ought to be sent to the jury with suitable instruction. And such is my judgment.
In the case of the Bank of Charleston, I am satisfied that the letter of the Josephs, of 20th April, 1837, which was anterior to the attachment, constituted a valid transfer or assignment of the assets claimed. As garnishee, he had a right to claim and hold under that, against the attachment.